**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**COLUMBUS DIVISION**

| | |
|---|---|
| JANET DAVIS, ANGEL RANDALL, and MELISSA SCHALLER, individually and on behalf of all others similarly situated, | CASE NO.: |
| | Judge |
| **Plaintiffs,** | Magistrate |
| v. | |
| | **CLASS-ACTION COMPLAINT** |
| GEICO CASUALTY COMPANY, a foreign corporation, GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation, and GEICO CHOICE INSURANCE COMPANY, a foreign corporation, | **(JURY TRIAL DEMANDED)** |
| **Defendants.** | |

Plaintiffs, Janet Davis, Angel Randall, and Melissa Schaller (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against GEICO Casualty Company ("GEICO Casualty"), Geico Advantage Insurance Company ("GEICO Advantage") and GEICO Choice Insurance Company ("GEICO Choice" and collectively "GEICO") and in support thereof state the following:

## NATURE OF THE ACTION

1. This is an Ohio class-action lawsuit by Ohio resident Plaintiffs, all of whom suffered a total loss on an insured vehicle. Randall was insured under a GEICO Casualty private passenger auto ("PPA") policy of insurance. Schaller was insured under a GEICO Advantage PPA policy of insurance. Davis was insured under a GEICO Choice PPA policy of insurance. Plaintiffs made covered claims for physical damage. Defendants breached Plaintiffs' policies the same way—by failing to pay the full sales tax, title transfer fees, and registration fees due under them.

2. Plaintiffs file this lawsuit on behalf of all persons insured under a GEICO Casualty, GEICO Advantage, or GEICO Choice Ohio PPA insurance policy who suffered a total-loss covered claim and to whom Defendants did not pay the full sales tax, title-transfer fees, and registration fees due under their policies.

3. The GEICO Casualty policy insuring Randall ("Policy") provides the same PPA physical damage coverage under the same policy terms as the policies ("Policies") insuring Schaller, Davis, and all putative class members.[1]

4. The Policy requires payment on first-party total-loss physical damage claims of Actual Cash Value ("ACV"). The Policy defines ACV as "the replacement cost of the auto or property less depreciation or betterment." Ex. A, Policy form A-30-OH, at 7.

5. The Policy requires Defendants to determine ACV for the property at "the time of the loss." *Id.* at 9.

6. The Policy imposes no condition on insureds to replace the total-loss vehicle or to pay any sales tax, title-transfer fees, or registration fees before entitlement to full ACV payment ("the replacement cost of the auto").

7. Sales tax, title-transfer fees, and registration fees are a mandatory part of the "replacement cost" of every PPA vehicle insured by Defendants in Ohio, including for Plaintiffs' total-loss vehicles.

8. State law imposes a mandatory state sales tax of 5.75% (plus local sales tax of 0–2%), minimum title transfer fees of $15.00, and minimum registration fees of $4.50 on each vehicle purchase or transfer of title and registration. As such, the Policy includes sales tax, title-transfer

---

[1] All Policy citations refer to Randall's insurance policy. Upon information and belief, Schaller's, Davis's, and class members' policies contain virtually identical material terms.

fees, and registration fees—all of which are mandatory replacement costs—in the ACV total-loss coverage provided by GEICO.

9.      The sales tax due under the Policies on a total-loss insured vehicle is called the ACV sales tax. ACV sales tax is based on the sales tax due on any purchase of a replacement vehicle of the same value as the total-loss vehicle "at the time of the loss."

10.      Defendants breach the Policy by imposing on insureds terms and conditions that are not contained in the Policy.

11.      Specifically, Defendants do not pay ACV sales tax, title-transfer fees, and registration fees on covered total-loss claims unless the insured purchases a replacement vehicle within 30 days of Defendants' initial coverage payment and presents proof of payment of sales tax, title-transfer fees, and registration fees on the purchase of the replacement vehicle.

12.      Even then, Defendants will not pay the full ACV sales tax under the policy unless the insured has purchased a replacement vehicle and has paid sales tax of equal or greater amount than the ACV sales tax.

13.      But the Policy, as a condition to receiving the full coverage under it, includes no requirement that an insured must purchase a replacement vehicle within 30 days; pay sales tax, title-transfer fees, and registration fees on the replacement vehicle; and provide proof of payment of tax and fees. Rather, the Policy provides it will pay a certain value—ACV—to be determined "at the time of the loss."

14.      By imposing an extracontractual condition requiring insureds to purchase a replacement vehicle and pay sales tax, title-transfer fees, and registration fees on the replacement vehicle, Defendants have breached their Policies with Plaintiffs.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiffs are members of the putative class, which consists of at least 100 members; (b) Plaintiffs are Ohio citizens and Defendants are Maryland citizens; and (c) the amount-in-controversy exceeds the sum of $5 million exclusive of interest and costs.

16.     Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendants are subject to personal jurisdiction here.

## PARTIES

17.     Janet Davis is and was domiciled in Franklin County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

18.     Angel Randall is and was domiciled in Summit County, Ohio and was an Ohio citizen at all times relevant to this lawsuit.

19.     Melissa Schaller is and was domiciled in Portage County, Ohio and was an Ohio citizen at all times relevant to this lawsuit.

20.     GEICO Casualty is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Maryland. GEICO Casualty is authorized to transact insurance in Ohio.

21.     GEICO Advantage is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Maryland. GEICO Advantage is authorized to transact insurance in Ohio.

22.     GEICO Choice is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Maryland. GEICO Choice is authorized to transact insurance in Ohio.

23.     GEICO Choice, GEICO Casualty, and GEICO Advantage are subsidiaries of Government Employees Insurance Company, along with several other GEICO branded insurance companies that provide PPA insurance coverage in Ohio.

24.     GEICO Casualty alone collected over $468 million in premiums for PPA auto insurance physical damage in Ohio during the class period. GEICO Advantage and GEICO Choice also collected hundreds of millions of dollars in premiums for PPA auto insurance physical damage in Ohio during the class period.

## FACTUAL ALLEGATIONS

**A.     Plaintiffs' collisions while Defendants insured them.**

25.     Randall entered the Policy agreement to be insured by GEICO Casualty under policy form A-30-OH. Exhibit A is the form policy, and it sets out the Policy terms of coverage for total-loss claims for Plaintiff and all putative class members.

26.     The Policy provided physical damage coverage for Randall's 2007 Pontiac G6, VIN 1G2ZG58NX74266648 ("Insured Vehicle").

27.     On or about October 1, 2017, Randall was involved in an auto collision while operating the Insured Vehicle. Randall filed a claim with GEICO Casualty for the Insured Vehicle physical damage caused by the collision, claim number 051452681-0101-033.

28.     GEICO Casualty determined that the Insured Vehicle was a total loss and that the claim was a covered claim.

29.     GEICO Casualty, through its vehicle valuation provider CCC Information Services, Inc., determined the Insured Vehicle had a total value of $4,115.50, before application of the $500.00 Policy deductible.

30.     The ACV sales tax on Randall's claim was $277.80 because the applicable sales tax was 6.75% (5.75% state sales tax and 1% local sales tax) and the value of Randall's Insured

Vehicle at the time of the loss was $4,115.50. The title-transfer fee on Randall's claim was $15.00 because Ohio mandates a minimum title-transfer fee of $15.00. The registration fee on Randall's claim was $4.50 because Ohio mandates a minimum registration fee of $4.50.

31.     GEICO Casualty paid $3,615 on Randall's total-loss claim ($4,115.50 minus the $500 Policy deductible). But this payment did not include the required $277.80 for ACV sales tax, or $15.00 for title-transfer fees, and $4.50 for registration fees.

32.     GEICO Casualty's failure to pay ACV sales tax, title-transfer fees, and registration fees at the time of the loss breached the Policy because these fees are mandatory costs necessary for the replacement of his totaled Insured Vehicle.

33.     Schaller entered an agreement to be insured by GEICO Advantage under policy terms with materially identical language as Exhibit A.

34.     The relevant policy provided physical damage coverage for her 2011 Volkswagen Touareg Sport.

35.     On or about December 3, 2018, Schaller was involved in an auto collision while operating the 2011 Volkswagen Touareg Sport. Plaintiff filed a claim with GEICO Advantage for the physical damage caused by the collision, claim number 056252748-0101-015.

36.     GEICO Advantage determined that the vehicle was a total loss and that the claim was a covered claim.

37.     GEICO Advantage, through CCC, determined the vehicle had a total value of $11,554.00, before application of the $1,500.00 Policy deductible.

38.     The ACV sales tax on Schaller's claim was $837.67 because the applicable sales tax was 7.25% (5.75% state sales tax and 1.5% local sales tax), and the value of her vehicle "at the time of the loss" was $11,554.00. The title-transfer fee on Schaller's claim was $15.00, because

Ohio mandates a minimum title-transfer fee of $15.00. The registration fee on her claim was $4.50 because Ohio mandates a minimum registration fee of $4.50.

39.     GEICO Advantage paid $10,054.00 on Schaller's total-loss claim ($11,554.00 minus the $1,500 Policy deductible). The payment did not include the required $837.67 for ACV sales tax, or $15.00 for title-transfer fees, and $4.50 for registration fees.

40.     GEICO Advantage's failure to pay ACV sales tax, title-transfer fees, and registration fees at the time of the loss breached the insurance agreement because these fees are mandatory costs necessary for the replacement of the totaled Insured Vehicle.

41.     Davis entered an agreement to be insured by GEICO Choice under policy terms with materially identical language as Exhibit A.

42.     The relevant policy provided physical damage coverage for her 2008 Mercury Mariner Premier 4WD, VIN # 4M2CU97108KJ35395.

43.     On or about December 8, 2017, Davis was involved in an auto collision while operating the 2008 Mercury Mariner Premier 4WD. Plaintiff filed a claim with GEICO Choice for the physical damage caused by the collision, claim number 059603077-0101-035.

44.     GEICO Choice determined that the vehicle was a total loss and that the claim was a covered claim.

45.     GEICO Choice, through CCC, determined the vehicle had a total value of $4,476.90, before application of the $500.00 Policy deductible.

46.     The ACV sales tax on Davis' claim was $335.77 because the applicable sales tax was 7.5%, and the value of her vehicle "at the time of the loss" was $4,476.90. The title-transfer fee on Plaintiff Davis' claim was $15.00, because Ohio mandates a minimum title-transfer fee of $15.00. The registration fee on her claim was $4.50 because Ohio mandates a minimum registration fee of $4.50.

47.     GEICO Choice paid $3,976.90 on Davis's total-loss claim ($4,476.90 minus the $500 Policy deductible). The payment did not include the required $335.77 for ACV sales tax, or $15.00 for title-transfer fees, and $4.50 for registration fees.

48.     GEICO Choice's failure to pay ACV sales tax, title-transfer fees, and registration fees at the time of the loss breached the insurance agreement because these fees are mandatory costs necessary for the replacement of the totaled Insured Vehicle.

**B.     The Policy requires GEICO to pay the replacement cost of the totaled automobile.**

49.     All entities under the Geico brand, including GEICO Choice, GEICO Casualty, and GEICO Advantage, utilize the same material policy terms; indeed, Defendants (along with all other Geico entities) utilize the same policy forms.

50.     Thus, Randall's Policy provides the same physical-damage coverage as the policies issued by GEICO Casualty, GEICO Choice, and GEICO Advantage to Schaller, Davis, and all class members during the class period. Randall's, Schaller's, Davis's, and class members' Policies contained identical material language during the class period with regard to Defendants' payment on PPA first-party total-loss physical damage claims.

51.     The Policies provided Plaintiffs and class members with comprehensive and collision coverage.

52.     The Policies define ACV as follows:

> 1.     *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.
>
> 2.     *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

* * *

5.  *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

Ex. A, Policy form at 7.[2]

53.  The Policies provide as follows relating to PPA physical damage comprehensive and collision coverage:

**Comprehensive (Excluding *Collision*)**

1.  We will pay for each *loss*, less the applicable deductible, caused other than by *collision,* to the *owned* or *non-owned auto*.

\* \* \*

*Collision*

1.  We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2.  We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3.  *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

*Id.* at 8.

54.  The Policies define **Loss** as follows:

1.  *Loss* means direct and accidental loss of or damage to:

a)  the auto, including its equipment; or

---

[2] All bold and italics appear in the original Policy.

b)  other insured property.

*Id.* at 8.  The Policies' definition of Loss applies to collision and comprehensive coverage.

55.  For purposes of Defendants' duty to pay ACV on a first-party total-loss claim, no difference exists between a collision total-loss claim and a comprehensive total-loss claim.

56.  The Policies provide the following limit of liability for PPA physical damage coverage:

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

1.  is the *actual cash value* of the property at the time of the *loss*;

2.  Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss.* Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3.  to personal effects arising out of one occurrence is $200;

4.  to a *trailer* not owned by *you* is $500;

5.  for *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

   *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

*Id*. at 9.

10

57.     The Policies do not condition an insured's receipt of full coverage upon the purchase of a replacement vehicle.

58.     The Policies do not condition Defendants' payments of total-loss coverage on an insured's purchase of a replacement vehicle.

59.     The Policies provide no notice to an insured that the amount of sales-tax coverage provided under them depends on an amount of sales tax actually paid on a replacement vehicle.

60.     The Policies do not require insureds to pay sales tax before receiving sales-tax coverage related to their vehicle's replacement cost.

61.     The Policies do not permit Defendants to withhold sales tax, title transfer fees, and registration fees from the ACV unless the insured purchases a replacement vehicle within 30 days of Defendants' original coverage payment and provides proof to Defendants of the payment of sales tax and title-transfer fees on such replacement.

62.     The Policies require ACV's determination at the time of the loss—*not* after the purchase of a replacement vehicle and *not* depending on any replacement vehicle's price.

63.     The Policies do not permit Defendants to determine the *amount* of sales tax coverage after purchase of any replacement vehicle. Instead, the Policies promise ACV sales tax— sales tax based on the value of the total-loss vehicle rather than sales tax incurred on the purchase of any replacement vehicle.

**C.      The Policies instruct that replacement cost for a total loss includes applicable taxes and fees.**

64.     Throughout the class period, Ohio and its local governments imposed sales taxes applicable to the purchase of any private passenger vehicle. These sales taxes are mandatory and apply to the replacement of all total-loss vehicles in Ohio. Ohio Rev. Stat. § 5739.02(A). None of

the exceptions in Ohio Rev. Stat. § 5739.02(B) apply to the sale or lease of private-passenger motor vehicles.

65.     Throughout the class period, Ohio prohibited buying or selling motor vehicles unless the certificate of title under the name of the buyer was provided. Ohio Rev. Stat. § 4503.03.

66.     Ohio also prescribes the method and form for applying for transfer of certificate of title into the name of the buyer. Ohio Rev. Stat. § 4503.06.

67.     Finally, Ohio imposes a flat (minimum) fee on certificate of title transfers. Ohio Rev. Stat. § 4503.09. These title-transfer fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. At the time of Plaintiffs' losses, the title-transfer fee was $15.00. *Id.*

68.     Throughout the class period, Ohio required that every vehicle be legally and properly registered to be used or operated on Ohio highways and roadways. Ohio Rev. Stat. § 4503.10.

69.     Ohio provides the authority to set the fee amount for transfer of registration to the state registrar. Ohio Rev. Stat. § 4503.038.

70.     These registration fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. The registration transfer fee at the time of loss on Plaintiffs' replacement vehicle was $4.50.

71.     Randall paid all premiums owed and otherwise satisfied all conditions precedent such that his insurance policy was in effect and operational at the time of his accident.

72.     Schaller paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of her accident.

73.     Davis paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of her accident.

## CLASS-ACTION ALLEGATIONS

74.     Under Fed. R. Civ. P. 23, Plaintiffs assert claims for breach of contract on behalf

of a class defined as follows:

> All Ohio residents insured for PPA physical damage by Defendants
> who:
>
> > (1) suffered a first-party total-loss of a covered vehicle
> > during the eight years before this lawsuit through class
> > certification;
> >
> > (2) whose claims Defendants adjusted as total-loss claims;
> >
> > (3) whose claims resulted in Defendants' payment of a
> > covered claim; and
> >
> > (4) to whom Defendants failed to pay the full ACV sales tax,
> > title transfer fees, or registration fees on their covered
> > claims.

Excluded from the class are Defendants and its affiliates, parents, and subsidiaries, officers and
employees, governmental entities, the judge to whom this case is assigned, and the judge's court
staff and immediate family.

### Fed. R. Civ. P. 23(a).

75.     **Numerosity**. Class members, believed to exceed 20,000, are so numerous and

geographically dispersed around Ohio that separate joinder of each is impracticable.

76.     The class members, which include Plaintiffs, are ascertainable and readily

identifiable from Defendants' information and records.

77.     **Commonality**. The following common questions of law and fact exist, which are

susceptible to common answers:

> a.      Whether "replacement cost of the auto" includes sales tax;
>
> b.      Whether "replacement cost of the auto" includes title-transfer fees;
>
> c.      Whether "replacement cost of the auto" includes registration fees;

d.      Whether the Policies require Defendants to pay sales tax to first-party total-loss claimants, without conditioning this payment on the insured having first purchased a replacement vehicle within 30 days of claim settlement;

e.      Whether the Policies require Defendants to pay title-transfer fees to first-party total-loss claimants, without conditioning this payment on the insured having first purchased a replacement vehicle within 30 days of claim settlement;

f.      Whether the Policies require Defendants to pay registration fees to first-party total-loss claimants without conditioning this payment on the insured having first purchased a replacement vehicle within 30 days of claim settlement;

g.      Whether the Policies require Defendants to pay sales tax based on the value of the total-loss vehicle "at the time of the loss"; and

h.      Whether Defendants breached the Policies by failing to pay sales tax, title-transfer fees, and registration fees without precondition.

78.     **Typicality**. Plaintiffs' claims and defenses are typical of the claims of class members' claims. Defendants injured Plaintiffs and class members through uniform misconduct and Plaintiffs' legal claims arise from the same core practices—namely, Defendants' failure to pay full ACV, including title-transfer fees and registration fees, for first-party total-loss claims under PPA physical damage policies issued under Form A-30-OH. Plaintiffs' and class members' claims are based upon the same legal theories. Plaintiffs suffered the same harm as all class members: unpaid sales tax, title-transfer fees, and registration fees due under their Policies.

79.     **Adequacy**. Plaintiffs are adequate class representatives because their interests do not conflict with class members' interests, and they will fairly and adequately protect these interests. Plaintiffs' counsel are experienced in litigating consumer class actions and complex litigation and have specific experience successfully litigating similar disputes as class counsel.

### Fed. R. Civ. P. 23(b)(3).

80.     **Predominance**: Questions of law and fact predominate over any questions solely affecting individual class members, including the common questions expressed above.

14

81.     **Superiority**. A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. Class members' injuries, while meaningful, are too small to prosecute individually. And even if they were, thousands of individual lawsuits burden the court system. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## BREACH OF CONTRACT

82.     Plaintiffs incorporate the preceding allegations.

83.     Randall had an insurance contract with GEICO Casualty and performed all requirements under it.

84.     Schaller had an insurance contract with GEICO Advantage and performed all requirements under it.

85.     Davis had an insurance contract with GEICO Choice and performed all requirements under it.

86.     Plaintiffs made claims under their Policies that Defendants determined to be a first-party total-loss covered claims.

87.     Plaintiffs' Policies required that that Defendants pay them full ACV sales tax, title transfer fees, and registration fees on their total-losses because these taxes and fees are mandatory replacement costs for total-loss insured vehicles.

88.     Defendants failed to pay Plaintiffs sales tax, title transfer fees, and title-transfer fees under their Policies.

89.     Defendants' failure to provide coverage—that is, to pay Plaintiffs, for sales tax, title-transfer fees, and registration fees—breached Defendants' contracts with Plaintiffs.

90.     As a result of Defendants' breaches, Plaintiffs have suffered damages and are entitled, under their Policies, to sums representing their sales tax, title-transfer fees, registration fees, pre- and postjudgment interest, attorneys' fees, and all costs and expenses of litigation.

91.     Plaintiffs and class members are entitled to an award of attorney's fees and costs under Ohio law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the class, demand a trial by jury on all triable issues and seek judgment as follows:

a)  An order certifying this action as a class action on behalf of the class;

b)  An award of compensatory damages in amounts owed under the Policies;

c)  An award for all other damages according to the proof;

d)  An award of attorneys' fees and expenses as appropriate;

e)  An award for costs of suit incurred herein;

f)  An award for pre- and postjudgment interests on any amounts awarded; and

g)  An award for other and further forms of relief as this Court deems just and proper.

Dated: June 13, 2019.                                  Respectfully submitted,

                                    By:     *s/Daniel R. Karon*
                                            Daniel R. Karon (0069304)
                                            Beau D. Hollowell (0080704)
                                            **KARON LLC**
                                            700 W. St. Clair Ave., Suite 200
                                            Cleveland, OH 44113
                                            Tel: (216) 622-1851
                                            dkaron@karonllc.com
                                            bhollowell@karonllc.com

Edmund A. Normand
Jacob L. Phillips
**NORMAND PLLC**
Post Office Box 1400036
Orlando, FL 32814-0036
Tel: (407) 603-6031
ed@ednormand.com
jacob.phillips@normandpllc.com

Bradley W. Pratt
**PRATT CLAY LLC**
4401 Northside Parkway
Suite 520
Atlanta, GA 30327
Tel: (404) 949-8118
bradley@prattclay.com

Christopher Hall
**HALL & LAMPROS LLP**
400 Galleria Parkway
Suite 1150
Atlanta, Georgia 30309
Tel: (404) 876-8100
chall@hallandlampros.com

Andrew Shamis

**SHAMIS & GENTILE, P.A.**
14 N.E 1st Ave Ste. 1205
Miami, FL 33132
Tel: (305) 479-2299
ashamis@shamisgentile.com

Scott Edelsberg
**EDELSBERG LAW, P.A.**
19495 Biscayne Blvd. #607
Aventura, FL 33180
Tel: (305) 975-3320
Scott@edelsberglaw.com

*Attorneys for Plaintiffs and the class*