# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JANET DAVIS,** *et al.,*

        **Plaintiffs,**

   v.

**GEICO CASUALTY COMPANY,** *et al.***,**

        **Defendants.**

        **Case No. 2:19-cv-2477**
        **JUDGE GEORGE C. SMITH**
        **Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Compel Appraisal and Dismiss Plaintiffs' Complaint (Doc. 10). Plaintiffs have responded in opposition (Doc. 21) and Defendants have replied (Doc. 24). For the following reasons, Defendants' Motion is **DENIED**.

### I.  BACKGROUND

Plaintiffs Janet Davis, Angel Randall, and Melissa Schaller all had motor vehicle insurance policies with one of the Defendants (the "Policies"). (Doc. 1, Compl. at ¶¶ 25, 33, 41). Plaintiffs allege that they were each involved in an automobile accident that resulted in a claim for physical damage to their respective vehicles under the Policies. (*Id.* at ¶¶ 27, 35, 43). Following submission of the claims, GEICO ultimately determined that Plaintiffs' vehicles were total losses. (*Id.* at ¶¶ 28, 36, 44). Under these circumstances, the GEICO Policy at issue provides that GEICO must determine Actual Cash Value of the vehicle "at the time of the loss", which is defined as "the replacement costs of the auto or property less depreciation or betterment." (Doc. 1-1, GEICO

Policy attached as Ex. A to the Complaint).[1]  Plaintiffs allege that GEICO breached the Policies with Plaintiffs by failing to pay the Actual Cash Value sales tax, title-transfer fees, and registration fees at the time of the loss.  (Doc. 1, Compl. at ¶¶ 4, 7, 8, 31, 39, 47).  Plaintiffs assert that nothing in the GEICO Policy pertains to the sales tax and other fees, nor does it provide that Plaintiffs were to pay new sales tax on the new vehicle before receiving sales tax coverage.

Section III of the Policies, Physical Damage Coverages, covers the amount of "each loss, less the applicable deductible."  (Doc. 1-1, GEICO Policy at 8).  "Loss" is defined as "direct and accidental loss of or damage to" the insured vehicle.  (*Id*.).  The GEICO Policy does require the Insured to: "File with us, within 91 days after loss, his sworn proof of loss including all information we may reasonably require."  (*Id*. at 10).  Section III also contains an appraisal provision which states in full:

> 6.      APPRAISAL
> If we and the ***insured*** do not agree on the amount of ***loss***, either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of ***loss***. We and the ***insured*** will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.
>
> We will not waive our rights by any of our acts relating to appraisal.

(*Id*. at 10 (emphasis in original)).

Further, the "Conditions" portion of Section III provides that "[s]uit will not lie against [GEICO] unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of loss is determined."  (*Id*.).

---

[1] The GEICO Insurance Policy for each for each of the named Plaintiffs and all putative class members contains the same material terms.

2

Plaintiffs initiated this case on June 13, 2019. (Doc. 1). Plaintiffs each assert a breach of contract claim against Defendants. On August 15, 2019, in response to Plaintiffs initiating this case, GEICO invoked its right to appraisal under their insurance policies by letter to Plaintiffs through their counsel of record in this case. (Doc. 10-3, GEICO's Ltr. to Demand Appraisal, attached as Ex. A to the Declaration of Michael R. Nelson). Defendants now move for the Court to compel the requested appraisal and/or dismiss this case.

## II. STANDARD OF REVIEW

In addition to moving for an appraisal, Defendants also move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff has failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause

3

of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Defendants have moved to compel appraisal and dismiss Plaintiffs' Amended Class Action Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will address these arguments in turn.

**A. Appraisal**

The parties dispute the payments made by GEICO to the individual Plaintiffs for the "Actual Cash Value" ("ACV") owed in settling the total loss claims on their insured vehicles. Plaintiffs assert that they are not disputing the base value of the vehicle but rather whether GEICO owes full sales tax, title fees, and registration fees.

GEICO's policy states that either party may invoke the appraisal provision if they "do not agree on the amount of loss." (Doc. 1-1, GEICO Policy at 26). Section III contains the appraisal provision which states in full:

> 6. APPRAISAL
> If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.
>
> We will not waive our rights by any of our acts relating to appraisal.

(*Id*. at 10 (emphasis in original)).

Plaintiffs counter Defendants' request for appraisal with the argument that they did not seek appraisal during the total loss settlement process or anytime before the filing of this lawsuit. Further, the language says that either party "MAY" but there is not requirement to do so, nor is there any exhaustion requirement before bringing a breach of contract claims. GEICO, however, asserts that it is "contractually entitled to have the appraisal process completed prior to suit on the policy." (Doc. 10, Defs.' Mot. at 4).

A recent case from the Second Circuit is on point: *Milligan v. GEICO Gen. Ins. Co.*, 2017 WL 9939046, at *10 (E.D.N.Y. July 14, 2017), report and recommendation adopted, 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018), aff'd sub nom. *Milligan v. CCC Info. Services Inc.*, 920 F.3d 146 (2d Cir. 2019). In *Milligan*, GEICO sought to compel appraisal after Plaintiff filed a lawsuit for damages for failure to pay the proper replacement value of plaintiff's total loss vehicle. Like in the present case, GEICO claimed that Milligan's suit was barred by the appraisal provision of the policy, which had the same appraisal provisions as the present case.

The *Milligan* court disagreed with GEICO's argument that the appraisal provision constitutes "[p]laintiff's sole remedy to contest the amount of loss in this action," finding that the contractual language does not support that construction because the appraisal provision states that either party "may, within 60 days after proof of loss is filed, demand an appraisal of the loss. . . ." The district court reasoned that: "[i]n contract construction, the word 'may' is generally permissive. *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 380 F.3d 704, 710 (2d Cir. 2004). At the same time, 'it can also be read as mandatory where the context suggests the parties so intended.' *Id*. Yet there is nothing here that suggests that this provision—little more than an alternative dispute resolution mechanism—was intended to be anything other than a voluntary remedial option. "In fact, the closing phrase of the provision, by which GEICO indicates that 'We

5

will not waive our rights by any of our acts relating to appraisal,' appears to highlight the contingent, non-binding nature of this provision." *Milligan*, 2017 WL 9939046, at *10.[2]  The Court agrees with the aforementioned reasoning and finds that there is nothing in the language of GEICO's policy that requires the parties to engage in appraisal, it is merely a voluntary process.

Additionally, the GEICO policy states that the demand for appraisal must be made "within 60 days after proof of loss is filed."  There has been no allegation that any such proof of loss was filed, nor that a demand for appraisal was made within the required timeframe.  However, Defendants suggest that they did not receive notice that Plaintiffs dispute the underlying settlement payments until they were served with the Complaint.  Defendants then treated the Complaint as a proof of loss and filed the demand for appraisal within 60 days.  The GEICO policy at issue does not define specifically constitutes a proof of loss.

GEICO argues that the Court should follow a factually similar case, *McGowen v. First Acceptance Ins. Co., Inc.*, No. 8:19-cv-1101-T-24CPT, 2019 U.S. Dist. LEXIS 196198, Dkt. No. 30 (M.D. Fla. Aug. 14, 2019), in which the court granted defendant insurer's motion to compel appraisal.  The court in *McGowen* addressed nearly identical disputes—whether the insurer improperly excluded sales tax and tag and title fees—and an identical policy appraisal provision concerning the "amount of loss."  *Id*.  The *McGowen* plaintiff similarly argued that the case presented a coverage issue, but the court found the issue to be appropriate for appraisal, relying on

---

[2] Defendants argue that *Milligan* is not applicable here because the *Milligan* court merely found that GEICO's demand for appraisal was untimely.  Defendants are not incorrect, however, the *Milligan* court also made a number of other conclusions.  Relying on *Amerex Group, Inc. v. Lexington Ins. Co.*, 678 F.3d 193, the Court reasoned that the "appraisal" sought by GEICO constituted an opinion on the extent and nature of the coverage provided under the policy and an appraiser may not resolve coverage disputes raising legal questions about the interpretation of an insurance policy.  The Second Circuit affirmed Milligan, denying the demand for appraisal, concluding: "[w]hether a loss is covered is not the only legal questions presented in an insurance case.  Questions over the extent of coverage and how to define the amount of loss also present legal questions of contract interpretation."  *Milligan*, 920 F.3d at 153-54.

Florida law. *Id*. Plaintiffs, however, argue that unlike Florida law, Ohio law makes clear that coverage determinations are issues of law for the court. *See e.g., Dutch Maid Logistics, Inc. v. Acuity*, 2009 WL 1019857, at *5 (Ohio 2009) ("Policy interpretation is a legal issue for the court to decide.") (citing *Gomolka v. State Auto Mut. Ins. Co.*, 70 Ohio St.2d 166, 167 (1982)); *Nationwide Ins. Co. v. Tobler*, 609 N.E.2d 1318, 1320 (Ohio 1992) ("The interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally.").

Appraisers are limited to making factual determinations regarding the amount of damages vehicle has incurred. It is not their responsibility to interpret policy language. This case is therefore distinguishable from *McGowen*. Although Plaintiffs seek to recover money that GEICO did not pay them, they do not dispute the value attributed to any aspect of the loss. In fact, Plaintiffs acknowledge that GEICO properly calculated the base value of the total loss vehicles at issue. Plaintiffs are merely asking this Court to decide whether sales tax, title fees, and registration fees are covered under the policy and Ohio law. This is a proper question for the Court and Defendants' Motion to Compel Appraisal is denied.

**B.      Motion to Dismiss**

As an alternative to seeking this Court to compel an appraisal, Defendants have moved to dismiss Plaintiffs' sales tax breach of contract claim for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To survive a motion to dismiss their breach of contract claims, Plaintiffs must demonstrate that they adequately pled: (1) the existence of a valid and enforceable contract; (2) performance by Plaintiffs; (3) breach of the contract by Defendants; and (4) damage or loss to Plaintiffs.

7

*Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law); *Discover Bank v. Swartz*, 2016-Ohio-2751, 51 N.E.3d 694, ¶ 15 (Ohio Ct. App. 2016).

Defendants assert that Plaintiffs have failed to allege that they incurred sales tax in obtaining a replacement vehicle following settlement of their total loss claims or that they presented proof of any taxes incurred in replacing their vehicles thereby triggering GEICO's obligation to pay. Defendants rely on Ohio Administrative Code 3901-1-54(H)(7) discussing an insurer's requirement to pay sales tax, which provides as follows:

> If within thirty days of receipt by the claimant of a cash settlement for the total loss of an automobile, the claimant purchases a replacement automobile, the insurer shall reimburse the claimant for the applicable sales taxes incurred on account of the claimant's purchase of the automobile, but not to exceed the amount that would have been payable by the claimant for sales taxes on the purchase of an automobile with a market value equal to the amount of the cash settlement. If the claimant purchases an automobile with a market value less than the amount of the cash settlement, the insurer shall reimburse only the actual amount of the applicable sales taxes on the purchased automobile. If the claimant cannot substantiate such purchase and the payment of such sales taxes by submission to the insurer of appropriate documentation within thirty-three days after receipt of the cash settlement, the insurer shall not be required to reimburse the claimant for such sales taxes.

Ohio Admin. Code 3901-1-54(H)(7)(f).

There is nothing in GEICO's policy about the aforementioned, but GEICO admits that the statutory insurance law in effect at the time the parties enter into an insurance contract "becomes a part of the policy and is applicable as though fully written into it." *Cartwright v. The Maryland Ins. Grp.*, 101 Ohio App. 3d 439, 442, 655 N.E.2d 827, 827 (1995); *see also Reinbolt v. Gloor*, 146 Ohio App. 3d 661, 667, 767 N.E.2d 1197, 1202 (2001) (stating "it is well settled that insurance contracts incorporate existing law"); *Griewahn v. United States Fid. & Guar. Co.*, 160 Ohio App. 3d 311, 316, 827 N.E.2d 341, 345 (2005) (recognizing "[t]he Ohio Supreme Court has held that the statutory law in effect at the time of entering into a contract for automobile liability insurance

controls the rights and duties of the contracting parties"). Additionally, the GEICO policies contain provisions setting forth that the terms of the Policy are to be interpreted pursuant to, and conform to, Ohio law. *See* Policy at 16, ¶¶ 15 & 17. Relying on the aforementioned, GEICO submits that it is only obligated to reimburse sales tax if: (1) taxes were incurred by the insured in purchasing a replacement vehicle; and (2) proof of the taxes were provided to GEICO within 33 days of the claim settlement. *See* Ohio Admin. Code 3901-1-54(H)(7)(f).

GEICO further relies on *Sigler v. GEICO Cas. Co.*, No. 1:18-cv-01446-MMM-JEH, 2019 WL 2130137 (C.D. Ill. May 15, 2019), which involved a similar lawsuit brought against GEICO in Illinois arising out GEICO's alleged failure to pay sales tax, title and tag fees in the settlement of total loss claims. *Id*. Illinois administrative code, in a provision nearly identical to Ohio Administrative Code § 3901-1-54(H)(7)(f), requires insurers to reimburse sales tax, title and tag fees in settlement of total loss claims only if an insured incurs taxes and fees in the replacement of the totaled vehicle and provides proof of those taxes and fees within thirty days. Ill. Admin. Code tit. 50, § 919.80(c)(3)(A)(i). GEICO successfully moved to dismiss on the same grounds articulated above. In dismissing the action, the *Sigler* court found that pursuant to Illinois statute, GEICO's "obligation [to pay taxes and fees] only arises . . . after cash settlements when the insured has purchased or leased a [replacement] vehicle." *Sigler*, 2019 WL 2130137, at *3.[3] Defendants seek a similar outcome in the present case based on the nearly identical nature of the allegations, policy language, and applicable regulations found in *Sigler*.

GEICO argues that because its practice is to reimburse sales tax incurred by an insured replacing their totaled vehicle in compliance with the mandatory provisions of the Administrative

---

[3] The *Sigler* court also held that "actual cash value" (i.e., the cost of replacement) in GEICO's policy does not include title fees or tag transfer fees such that any obligation to reimburse insureds arose from an Illinois regulation not from the governing policy language. *Sigler*, 2019 WL 2130137.

Code, Plaintiffs' claims for breach of contract must fail. In other words, GEICO is arguing that the alleged breach would be of the Code, and not the insurance policies themselves.

Plaintiffs counter that the GEICO policy contains no provision permitting GEICO to condition payment of the actual cash value[4] (or the sales tax aspect of ACV) on the purchase of a replacement vehicle. The policy does not state that replacement costs of sales tax (part of ACV) will be determined only after (and contingent on) the insured purchasing a replacement vehicle. The policy does not state that GEICO only pays the sales tax replacement cost of the full amount if the insured purchases a replacement vehicle valued as highly as the totaled vehicle. In fact, the GEICO policy states the opposite: that ACV/replacement costs will be determined at the time of loss. Plaintiffs therefore argue that GEICO's practice of conditioning the sales tax amount on the purchase of a replacement vehicle is contrary to the terms of the policy.

Ohio law is clear that coverage limitations such as preconditions must be expressly stated in an insurance policy. *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 938 (Ohio 2011) (limitations or exclusions must be "clearly expressed"). Plaintiffs argue, and the Court agrees that the GEICO policy contains no express precondition requiring insureds to first replace their total-loss vehicle in order to establish entitlement to coverage for sales tax, therefore calling into question such precondition on its insureds.

Further, Plaintiffs assert that GEICO's practice of conditioning any coverage for ACV on an insured actually purchasing a replacement vehicle is also contrary to Ohio law. *See, e.g., Vargo v. State Auto Mut. Ins. Co.*, 2011 WL 31116, at *11 (N.D. Ohio Jan. 5, 2011) (ACV, defined as cost of replacement minus depreciation, owed if no replacement occurred, and replacement cost

---

[4] The policy does not define ACV as market value. Rather, GEICO chose to define ACV as "replacement cost" which clearly includes all costs associated with replacement. Plaintiffs chose a policy requiring it to pay the "replacement cost." Plaintiffs paid a premium for these policies and the coverages provided therein (as opposed to a lesser, non-ACV policy that merely provided for market value).

10

(without deduction for depreciation) owed if replacement did occur); *Jenkins v. State Farm Fire & Cas. Co.*, 2012 WL 6681882, at *4 (Ohio Ct. App. 2012) (even though insured did not provide evidence of actual replacement, he was entitled to ACV, i.e., cost of replacement minus depreciation); *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, 962–63 (6th Cir. 2005) ("Indeed, even if Parkway chooses not to repair its property at all, it would still be entitled to what it bargained for: the actual cash value of its loss[.]").

The Court recognizes that GEICO's practice is arguably based on the aforementioned Ohio Administrative Code section, however, there is some question as to whether the actual cash value at the time of the loss, which is the specific language included in the GEICO policy, actually includes sales tax, title-transfer fees, and registration fees.  Therefore, Plaintiffs have sufficiently pled a claim for breach of contract as it pertains to sales tax, title-transfer fees, and registration fees at this stage in the proceedings.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Appraisal and Dismiss is **DENIED**.

The Clerk shall remove Document 10 from the Court's pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　 */s/ George C. Smith*　　　　　　　
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**