# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JANET DAVIS, ANGEL RANDALL,**
**ALMA LEE RESENDEZ, MANDY**
**PHELAN, and TREY ROBERTS,**
**individually and on behalf of all**
**others similarly situated,**

              **Plaintiffs,**              **Case No. 2:19-cv-2477**
                                      **JUDGE EDMUND A. SARGUS, JR.**
      **v.**                         **Magistrate Judge Elizabeth Preston Deavers**

**GEICO CASUALTY CO., *et al.*,**

              **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO General Insurance Company, and GEICO Secure Insurance Company's (collectively, "GEICO" or "Defendants") Motion to Stay (ECF No. 124), GEICO's Motion for Summary Judgment (ECF Nos. 128, 134), GEICO's motions to exclude expert testimony and reports (ECF Nos. 179, 180), and Plaintiffs Janet Davis, Angel Randall, Alma Lee Resendez, Mandy Phelan, and Trey Roberts' (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, Motion for Summary Judgment (ECF No. 129, 136) and Plaintiffs' unopposed motion for extension of time to respond to GEICO's motions to exclude (ECF No. 181). For the following reasons, the Court **DENIES as moot** GEICO's motions to exclude expert testimony and reports (ECF Nos. 179, 180); **GRANTS in part** and **DENIES in part** GEICO's Motion for Summary Judgment (ECF Nos. 128, 134); **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for Summary Judgment (ECF Nos. 129, 136); **DENIES as moot** GEICO's Motion to Stay (ECF No. 124); and **DENIES as moot** Plaintiffs' extension request (ECF No. 181).

This class action asks the following question: Did GEICO breach its contractual obligations to Plaintiffs under their automobile insurance policies when, after Plaintiffs suffered a total loss to their insured vehicles, GEICO opted to pay Plaintiffs for the physical damage to their vehicles without including the costs associated with sales tax, transfer of title fees, and title registration fees? The Court answers "yes." While the policy language is silent as to these taxes and fees, Plaintiffs' interpretation is reasonable—and that is enough. When an insurance law is ambiguous, Ohio law requires courts to interpret insurance policies strictly against the insurer, so long as the insured's interpretation is reasonable. The Court finds, as many have, that GEICO was required to pay Plaintiffs the "actual cash value" of their total-loss vehicles, which includes those expenses that are likely part of the typical replacement costs of the vehicle, such as sales tax, title fees, and title registration fees.

## I.    BACKGROUND

The five named plaintiffs ("Plaintiffs") in this case were each involved in a car accident between 2009 and 2020. At the time of the accidents, Plaintiffs' vehicles were insured under an insurance policy (the "Policy") that was issued by GEICO Casualty and its subsidiaries (together, "GEICO" or "Defendants"). The Plaintiffs each filed a claim with GEICO. GEICO determined that their vehicles were total losses, meaning that it was uneconomical or impossible to repair the vehicles. GEICO thereafter issued Plaintiffs settlement amounts equal to their totaled vehicle's "actual cash value" ("ACV") to compensate them for their vehicles. Plaintiffs bring this action, on behalf of themselves and all others similarly situated, arguing that the settlement amounts failed to include additional compensation for sales tax, title fees, and title registration fees. Plaintiffs assert that GEICO's Policy entitles them to such compensation.

### A. GEICO's Policy

Section III of the Policy, titled Physical Damage Coverages, governs GEICO's obligations in the case of loss or damage to an insured's car. (Policy at 7, ECF No. 129-1.) The Policy provides, in pertinent part:

> **DEFINITIONS**
> 1. **Actual cash value** is the replacement cost of the auto or property less **depreciation** or **betterment**.
> 2. **Betterment** is improvement of the auto or property to a value greater than its pre-loss condition.
>
> [. . .]
>
> 5. **Depreciation** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes . . . .
>
> 7. **Loss** means direct and accidental loss of or damage to;
>     (a) the auto, including its equipment; or
>     (b) other insured property
>
> [. . .]
>
> 9. **Owned auto** means:
>     (b) a private passenger . . . auto . . ., ownership of which is acquired by **you** during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more . . . .
>
> [. . .]
>
> **LOSSES WE WILL PAY FOR YOU**
> 1. We will pay for each **loss**, less the applicable deductible . . . to the **owned or non-owned auto**.
>
> [. . .]
>
> ***Collision***
> 1. We will pay for ***collision loss*** to the ***owned*** or ***non-owned auto*** for the amount of each ***loss*** less the applicable deductible.
>
> [. . .]
>
> **LIMIT OF LIABILITY**
> The limit of our liability for **loss**;

1. is the **actual cash value** of the property at the time of the **loss**;
2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*…with other of like kind and quality . . . .

[. . .]

5. . . . **Actual cash value** of property will be determined at the time of the **loss** and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.

[. . .]

**CONDITIONS**

[. . .]

7. PAYMENT OF **LOSS**
We may at our option:
(a) pay for the **loss**; or
(b) repair or replace the damaged or stolen property.

(ECF No. 129-1 at 7–10.)

The parties do not dispute that the Policy must be interpreted pursuant to the laws of the state of Ohio and conform to Ohio law. (Pl.'s Resp. Defs. Stmt. Material Facts, ECF No. 143 at 4.)

**B. Sales Tax, Title Transfer Fees, and Title Registration Fees**

In Ohio, an individual or entity purchasing or leasing a vehicle is responsible for the payment of sales tax. When a vehicle is purchased, the amount of the sales tax is based on the purchase price of the vehicle. Ohio Rev. Code §§ 5739.025(A), 5739.01(H). Ohio imposed statewide sales tax during the class period of 5.50% before September 1, 2013, and 5.75% thereafter. Ohio Rev. Code § 5739.02(A); Defs. Resp. Pls.' Stmt. Material Facts, ECF No. 141-2 at 10. In the context of acquiring a leased vehicle, although the parties dispute the appropriate measure for determining the sales tax, the parties do not dispute that a sales tax applies. (Defs. Resp. Pls.' Stmt. Material Facts, ECF No. 141-2 at 12-13.)

Ohio law generally requires every vehicle to be legally titled. Ohio Rev. Code § 4505.03. Ohio also imposes a one-time $15.00 fee to transfer title to record ownership of a vehicle. Ohio Rev. Code § 4505.09(A)(1)(b). In the event of a total loss, insureds can transfer their existing registration to a new vehicle, which cost $4.50 until December 2019, at which point the fee increased to $6.00. Ohio Rev. Code § 4503.12(A)(4); Defs. Resp. Pls.' Stmt. Material Facts, ECF No. 141-2 at 10; *Documents and Fees*, OHIOBMV, https://www.bmv.ohio.gov/doc-fees.aspx (last visited Feb. 23, 2023).

During the relevant period, GEICO did not pay sales tax, title fees and registration transfer fees in the settlement of Ohio first party total loss claims unless the insured submitted documentation proving that such taxes and fees were incurred on the purchase or lease of a replacement vehicle. (Koontz Dep., ECF No. 129-3, PageID 3718-20.) In other words, only *after* an insured had provided GEICO with proof of replacing the totaled vehicle did GEICO reimburse the insured for the applicable sales tax, title transfer fees, and title registration fees.

### C. Procedural History

On June 13, 2019, Plaintiffs filed this class action on behalf of themselves and others similarly situated. (*See generally* Compl., ECF No. 1.) Shortly thereafter, GEICO filed a Motion to Dismiss for Failure to State a Claim, which the Court denied on January 7, 2020. (ECF No. 25.) On March 3, 2021, the Court permitted Plaintiffs to file a Third Amended Complaint, in which Plaintiffs allege that GEICO is liable for breach of contract for failing to pay sales tax, title fees, and title registration fees to insureds with total losses as required by GEICO's Policy. (ECF No. 77 at ¶¶ 104–115.)

The Court granted Plaintiffs' motion for class certification on December 13, 2021. (Op. & Order, ECF No. 123.) In response to the Order granting class certification, Plaintiffs moved to

amend the class definition (ECF No. 138), which the Court granted on May 5, 2022. (ECF No. 165.)

After the Court granted Plaintiffs' motion for class certification, GEICO filed a petition with the Sixth Circuit seeking interlocutory review of the decision. *See In re: GEICO Cas. Co., et al*, Case No. 21-309 (6th Cir.). Soon after filing their petition, GEICO moved to stay this action pending the resolution of its petition before the Sixth Circuit. (ECF No. 124.) Before ruling on GEICO's motion to stay, the Sixth Circuit denied GEICO's petition.[1]

On August 25, 2022, Plaintiffs moved for approval of their proposed notice plan to provide notice to all potential class members. (ECF No. 168.) GEICO did not challenge Plaintiffs' proposed notice plan (ECF No. 172), and the Court issued an Order approving the notice plan on October 3, 2022 (ECF No. 173).

On January 17, 2023, GEICO filed two motions seeking to exclude the testimony and reports from two of Plaintiffs' proposed experts: George Erickson and Mike Rankin. (ECF Nos. 179, 180.) Plaintiffs, on the day their opposition responses were due and after conferring with GEICO, requested a deadline extension. (ECF No. 181.) However, before the Court ruled on this request, Plaintiffs timely filed their opposition briefs.[2] (ECF Nos. 182, 183.) GEICO has since replied. (ECF Nos. 184, 185.)

In sum, at issue before the Court are the following motions: Plaintiffs and GEICO's motions for summary judgment and GEICO's motions to exclude testimony and reports from two of Plaintiffs' proposed experts. These motions are fully briefed and ripe for review.

---

[1] Given the Sixth Circuit's denial of GEICO's petition, GEICO's pending Motion to Stay is **DENIED as moot**. (ECF No. 124.)

[2] Accordingly, Plaintiffs' requested deadline extension is **DENIED as moot**. (ECF No. 181.)

## II.    MOTIONS TO EXCLUDE

The Court will briefly address GEICO's pending motions to exclude.

GEICO moves this Court to exclude the opinions and reports of Plaintiffs' experts George Erickson and John Rankin, pursuant to Rule 702 of the Federal Rules of Evidence. (ECF Nos. 179, 180.) GEICO challenges Mr. Erickson's expert report and testimony, which purportedly addresses certain insurance industry customs and standards, as improperly providing a coverage opinion relating to the Policy. (ECF No. 179 at 2, 4–5.) As for Mr. Rankin, GEICO asserts that several of his opinions, which apply an Ohio tax statute to the facts in this case, usurp the role of the Court. (ECF No. 180 at 4.) The Court holds, however, that it need not determine GEICO's motions to exclude because the Court did not—nor did it need to—rely upon these experts to render its decision on summary judgment.

The central question before the Court asks whether GEICO's Policy requires GEICO to pay Plaintiffs the ACV on their total-loss vehicles, which may or may not include the costs associated with sales tax, transfer of title fees, and title registration fees. This question asks the Court to assume the role of policy interpreter—a role specifically within the Court's purview. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir. 1999). And to the extent the Policy has any ambiguity, the Court does not turn to experts for elucidation, rather, Ohio law dictates that any such ambiguity be construed against the drafter, *i.e.*, GEICO. *See id.*; *see also Way Int'l*, 2009 U.S. Dist. LEXIS 90221, *42 (S.D. Ohio Jan 27, 2009). Likewise, the application of Ohio's tax statutes to this case does not call for expert testimony. *See I.L. v. Knox Cty. Bd. of Educ.*, 257 F. Supp. 3d 946, 990 (E.D. Tenn. June 15, 2017) ("Statutory interpretation, however, is a legal issue, not a factual one.") (citing *Berry*, 25 F.3d 1342, 1353 (6th Cir. 1994) and *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (collecting cases rejecting expert

testimony for statutory interpretation)). Thus, because the Court finds it unnecessary to reach these motions, GEICO's motions to exclude are **DENIED as moot**.

### III.    MOTIONS FOR SUMMARY JUDGMENT

GEICO filed a Motion for Summary Judgment (ECF Nos. 128, 134) and Plaintiffs filed a Motion for Summary Judgment (ECF No. 129, 136). GEICO filed a response in opposition to Plaintiffs' motion for summary judgment (ECF No. 141), and Plaintiffs filed a response in opposition to GEICO's motion (ECF No. 142). GEICO filed a reply in support of their motion (ECF No. 155), as did Plaintiffs (ECF No. 156).

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("The requirement that a dispute be 'genuine' means that there

must be more than some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### B. Law Governing Breach of Contract Claim

Ohio contract law applies to Plaintiffs' claims. *See, e.g.*, *Nationwide Ins. Co. v. Tobler*, 609 N.E.2d 1318, 1320 (Ohio Ct. App. 1992) ("An insurance policy is a contract and the relationship between the insurer and the insured is purely contractual in nature."). To prevail in an action for breach of contract, a plaintiff must prove "(1) a contract existed, (2) the complaining party fulfilled its contractual obligations, (3) the opposing party failed to fulfill its obligations, and (4) the complaining party incurred damages as a result of this failure." *Nayyar v. Mt. Carmel Health Sys.*, No. 2:12-CV-00189, 2013 U.S. Dist. LEXIS 77512, at *31 (S.D. Ohio June 3, 2013) (quoting *Marion Forum, L.L.C. v. Lynick Ents., Inc.*, 2012-Ohio-5947, ¶ 4 (Ohio Ct. App. 2012)). To establish the third requisite element—a material breach—a plaintiff must be able to point to a particular contract provision or obligation that was breached. *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012).

"Under Ohio law, '[i]f a contract is clear and unambiguous, then its interpretation is a matter of law'" for the Court. *See Masco Corp. v. Wojcik*, 795 F. App'x 424, 427 (6th Cir. 2019) (quoting *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995)). If the contract is "facially ambiguous," however, the court may rely on external evidence to determine the contract's meaning. *Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 668 (6th Cir. 2021). "[W]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988). Thus, if the insured

can make a showing that the loss is covered, an insurer, to avoid coverage for any part of the loss, "must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language." *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 915 N.E.2d 687, 692-93 (Ohio 2009); *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001).

Interpretation of insurance contracts may be decided at summary judgment. *Westport Ins. Corp. v. Coffman*, No. C2-05-1152, 2009 U.S. Dist. LEXIS 6302, at *9 (S.D. Ohio Jan. 29, 2009); *see also McPheeters v. United Servs. Auto. Ass'n*, 549 F. Supp. 3d 737, 743 (S.D. Ohio July 13, 2021) (noting that a court may interpret an insurance policy as a matter of law).

### C. Analysis

This case turns on whether GEICO breached its contractual obligations to Plaintiffs under the Policy when, after Plaintiffs sustained a total loss to their insured vehicles, GEICO opted to pay Plaintiffs their totaled vehicle's "actual cash value" ("ACV") without including the costs associated with sales tax, transfer of title fees, and title registration fees. While the Policy does not contain explicit language requiring the payment of sales tax, transfer of title fees, and title registration fees, Plaintiffs claim that the ACV to which they were owed includes these disputed fees. Plaintiffs' theory of the case is as follows: The Policy defines ACV as the vehicle's "replacement costs…less depreciation or betterment," but does not define "replacement costs." Plaintiffs read "replacement costs" as including the costs necessary to replace a vehicle in Ohio. Sales tax, title fees, and registration fees are mandatory costs necessary to replace a vehicle in Ohio and therefore ACV encompasses these taxes and fees. Because GEICO failed to pay Plaintiffs these taxes and fees when paying the ACV of Plaintiffs' totaled vehicles, GEICO has materially breached the Policy. (Pls. Mot. Sum. J., ECF No. 129, PageID 3638.)

In response, GEICO argues: (1) the Policy does not cover sales tax and fees because it only provides coverage for "loss," which is limited to physical damage of an insured vehicle; (2) Plaintiffs impermissibly seek to expand the scope of coverage for a loss by relying on the definition of ACV found in the "Limit of Liability" provision of Section III of the Policy; (3) even if the "Limit of Liability" provision is relevant to assess coverage, the provision still only applies to the actual cost of replacing the insured's physical vehicle; and (4) alternatively, certain named Plaintiffs and class members are not entitled to the disputed fees. [3] (Defs. Mot. Sum. J., ECF No. 128, PageID 3090-92.)

### 1. The Policy requires GEICO to pay Plaintiffs the "actual cash value" of their totaled vehicles

Before the Court answers whether "actual cash value" encompasses the sales tax and fees at issue in this action, the Court will first address whether the Policy requires GEICO to pay Plaintiffs the ACV of their totaled vehicles.

Under Section III of the Policy, GEICO agrees to pay for an insured's "***loss***, less the applicable deductible. . . ." (Policy at 8, ECF No. 129-1.) The Policy defines "loss" as "direct and accidental loss of or damage to" the insured vehicle. (*Id.*) The extent to which GEICO agrees to pay for the insured's loss is limited to "the actual cash value of the property at the time of the loss." (*Id.* at 9) "Actual cash value" is defined as "the replacement cost of the auto or property less depreciation or betterment." (*Id.* at 7 (emphasis removed).)

---

[3] GEICO's motion for summary judgment also appeared to argue that GEICO could not breach the Policy's terms because the Policy conformed to Ohio Admin. Code 3901-1-54(H)(7)(f) (Ohio's Total Loss Regulation). (ECF No. 128, PageID 3105.) Plaintiffs interpreted GEICO's position as suggesting that Ohio's regulatory minimum standards operate as GEICO's maximum coverage obligation regardless of the Policy's terms. (Pls. Mot. Sum. J., ECF No. 129, PageID 3659.) GEICO has since clarified that insurers may provide coverage above the minimum requirements set by Ohio law, but GEICO has not done so here. (Defs. Reply, ECF No. 155, PageID 5695-96.) Thus, GEICO is *not* raising its compliance with Ohio's total loss regulation as a defense to a finding requiring GEICO to cover the disputed fees under the Policy; Instead, GEICO mentions its compliance with the statute to show that, assuming GEICO does not owe Plaintiffs the disputed fees, then it has neither breached the Policy nor violated Ohio law. If, however, the Court finds that the Policy obligates GEICO to cover the disputed fees, GEICO and Plaintiffs agree that GEICO's compliance with Ohio's total loss regulation would not preclude payment of the taxes and fees.

GEICO takes the position that it is only required to pay for "loss," meaning "direct and accidental loss of or damage to" the vehicle—*not* the "actual cash value" of the vehicle. Thus, because the disputed taxes and fees are not "direct and accidental loss of or damage to" a vehicle, the Policy unambiguously excludes them in a covered loss. As for the "actual cash value" language upon which Plaintiffs rely, GEICO argues it is of no import because it applies only as a limitation of GEICO's liability and not as a mechanism expanding the scope of coverage for a loss; in other words, GEICO agrees to pay no more than "the actual cash value of the property at the time of the loss" though GEICO does not promise to pay that amount.

In support of its position, GEICO directs the Court's attention to several cases outside the Sixth Circuit. (*See* Defs. Mot. Sum. J., ECF No. 128, PageID 3103-04.) GEICO places particular emphasis on *Sigler v. GEICO Cas. Co.*, 967 F.3d 658 (7th Cir. 2020) and *Barlow v. Gov't Emps. Ins. Co.*, No. 19-cv-3349, 2020 U.S. Dist. LEXIS 179455 (E.D.N.Y. Sep. 29, 2020).[4] In *Sigler*, which interpreted an insurance policy like the policy at issue here, the Seventh Circuit found that the "Limit of Liability section . . . doesn't promise to pay [taxes and fees] regardless of whether the insured incurs them; it simply describes the *most* that GEICO will pay in the event of a covered loss." *Sigler*, 967 F.3d at 660. And *Barlow*, relying on the analysis articulated in *Sigler*, reached the same conclusion. *Barlow*, 2020 U.S. Dist. LEXIS 179455, at *10-11. GEICO therefore asserts that, based on these cases and the unambiguous language of the Policy, the limit of liability section under the Policy does not impose on GEICO an obligation to pay Plaintiffs the specific amount listed in that section.

Plaintiffs, on the other hand, read the relevant provisions as requiring GEICO to pay the "actual cash value" of the vehicle in the event of a total loss. The Court finds this interpretation reasonable. Although the Policy places ACV under the section titled "LIMIT OF LIABILITY,"

---

[4] GEICO also relies on *Coleman v. Garrison Prop. & Cas. Ins. Co.*, 839 F. App'x 20, 20 (7th Cir. 2021). This decision is in lockstep with *Sigler*; therefore, the Court's rationale for rejecting *Sigler* applies equally to *Coleman*.

the language and structure of the Policy suggests that GEICO is required to pay ACV when it pays for a total loss. The section declares that "[t]he limit of our liability for ***loss*** . . . is the ***actual cash value*** of the property at the time of the ***loss***[.]" This language draws a connection between "loss" and ACV. Given this connection, the Court finds it at least reasonable that ACV, rather than expanding the Policy's coverage as GEICO argues, serves as the measure of coverage in the event of a total loss.

The Court is not alone in finding that ACV in a limitations section may define a policy's coverage. The Sixth Circuit, interpreting *Ohio* law, has found that the term "actual cash value" can determine the scope of coverage on a total loss vehicle—even if the policy uses ACV in a limitations section. *See Wilkerson*, 997 F.3d at 668 (interpreting policy as requiring payment of ACV on a total loss where ACV was within the limitations section of the policy). So, too, has this District. *See McPheeters*, 549 F.Supp.3d at 747 (S.D. Ohio 2021) ("'actual cash value' may define a policy's *coverage* even if it is used in a *limitations* section."); *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 U.S. Dist. LEXIS 5163, at *5-10 (S.D. Ohio Jan. 13, 2020) (finding ACV ambiguous and thus may include taxes where "limit of liability" was lesser of ACV or amount necessary to repair or replace).

Moreover, the cases on which GEICO relies are of limited utility in answering whether the Policy requires GEICO to pay Plaintiffs the "actual cash value" of their totaled vehicles. First, *Sigler* and *Barlow* interpreted insurance policies under the law of a different state and arrived at their decisions by applying state laws and regulations. *Sigler*, 967 F.3d at 660-61 (applying Illinois law); *Barlow*, 2020 U.S. Dist. LEXIS 179455, at *14-15 (applying New York law). Second, neither court adequately grappled with the interaction between the relevant Policy terms. *See McNichols v. Geico Gen. Ins. Co.*, No. 3:20-CV-01497, 2021 U.S. Dist. LEXIS 135674, at *13-14 (D. Conn. July 21, 2021) ("[*Sigler* and *Barlow*] summarily assert that a limit of liability section cannot be

13

asserted as the basis of a coverage claim, without addressing the interplay between all of these contract terms."). Third, other courts interpreting similar insurance policies under Ohio law have rejected *Sigler* due to its reliance on state law and its stiff approach to insurance contract interpretation. *See McPheeters*, 549 F.Supp.3d at 747 ("neither *Sigler* nor *Coleman* apply Ohio law."); *Desai v. Geico Cas. Co.*, 541 F. Supp. 3d 817, 824 (N.D. Ohio May 24, 2021) ("*Sigler* interpreted an insurance policy under the law of a different State, and local insurance regulations specifically guided the *Sigler* Court."); *Ostendorf*, 2020 U.S. Dist LEXIS 5163, at *9 ("This Court finds that *Sigler* is an outlier and applied too stringent a standard to the breach of contract claim.").

On top of the substantial caselaw that cuts against GEICO's position, GEICO's own deposition testimony indicates that GEICO pays ACV on total losses. GEICO's regional auto damage director testified that, pursuant to the GEICO Auto Damage Adjusters Handbook, GEICO adjusters inform insureds that GEICO pays the "actual cash value" of an insured's totaled vehicle. (Koontz Dep., ECF No. 90-2, PageID 996-97.) GEICO reiterated this position when its "auto damage adjuster 2" testified that GEICO always pays actual cash value after a total loss. (Caccamise Dep., ECF No. 129-4, PageID 3759.) While the Court does not use this testimony for guidance in interpreting the Policy, such testimony nevertheless demonstrates that GEICO's business practices align with Plaintiffs' position.

Guided by the language of the Policy, against the backdrop of multiple decisions from other courts applying Ohio law to similar insurance provisions, this Court finds that Plaintiffs' reading of the Policy is reasonable. That is, the Policy's "LIMIT OF LIABILITY" section, which limits GEICO's liability for "loss" to the "actual cash value" of the insured vehicle, defines the scope of GEICO's liability. Therefore, because GEICO invoked the ACV limit on liability when covering Plaintiffs' total loss, the Policy requires GEICO to pay Plaintiffs the ACV of their insured vehicles.

### 2.   ACV includes sales tax, title fees, and title registration fees

The Court now reaches the most contentious issue in this case: does "actual cash value" include the sales tax, titles fees, and title registration fees that Plaintiffs seek to recover? The Court answers in the affirmative.

The Policy defines "actual cash value" as "the replacement cost of the auto or property less depreciation or betterment." (ECF No. 129-1 at 7.) "Depreciation" is defined as "a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes," while "betterment" is defined as an "improvement of the auto or property to a value greater than its pre-loss condition." (*Id.*) Nowhere in the policy does it define "replacement cost" or state whether ACV includes sales tax, title fees, and title registration fees.

GEICO argues that the plain language of the Policy precludes payment of taxes and fees because ACV is limited to the costs associated with replacing the insured's physical vehicle, not the ancillary fees associated with owning, registering, or driving a vehicle. (Defs. Mot. Sum.  J., ECF No. 128, PageID 3106-07.) GEICO reaches this conclusion by zeroing in on the terms "depreciation" and "betterment," which GEICO argues can only apply to the physical vehicle. In other words, "actual cash value" does not include taxes and fees because they are not subject to depreciation or betterment.

The Sixth Circuit disagrees with GEICO's position. Facing similar facts, the Sixth Circuit in *Wilkerson* declared that if a policy defines "actual cash value" as "replacement cost minus normal depreciation" for the totaled car, then "the policy might well include the taxes and fees that [plaintiff] seeks because those expenses are likely part of the typical 'replacement costs.'" 997 F.3d at 670. Before the Court is such a policy. The Policy here defines "actual cash value" as "the replacement cost of the auto or property less depreciation or betterment"; as such, *Wilkerson*

suggests that it is at least reasonable for an insured to believe that ACV encompasses sales tax and the fees at issue.

Attempting to sidestep *Wilkerson*, GEICO invites this Court to follow precedent from other circuits. The Court declines GEICO's invitation. GEICO relies primarily on *Sigler*, where the Seventh Circuit held that an insurance policy did not require the insurer to pay the insured's sales tax and title and transfer fees in a total-loss claim where the policy limited liability to "actual cash value" (defined as "the replacement cost of the auto or property less depreciation or betterment"). 967 F.3d at 659-60. For the reasons set forth in Section III.C.1, the Court will not adopt *Sigler's* reasoning. As *Wilkerson* made clear, where ACV means "replacement cost minus normal depreciation," as is the case here, taxes and fees may reasonably be included under the Policy. 997 F.3d at 670. Indeed, this Court has found that "actual cash value" includes the disputed fees. *See McPheeters*, 549 F. Supp. at 747 (finding that because "actual cash value" is tied to "the cost to replace," it includes payment for sales tax); *Ostendorf*, 2020 U.S. Dist. LEXIS 5163, at \*10 (finding plaintiffs entitled to sales tax and vehicle fees in total loss claims because "actual cash value" is "ambiguous under the Policy" and plaintiff's interpretation that it includes these fees "is reasonable").

Setting aside the decisions undercutting GEICO's position, the language of the Policy does not unambiguously support GEICO's interpretation. The Policy defines "actual cash value" as "the replacement cost of the auto or property less depreciation or betterment." GEICO insists that "depreciation" and "betterment" limit ACV to the replacement costs of physical property because only physical property can depreciate;[5] however, this limitation to physical property is nowhere to

---

[5] GEICO's argument is particularly weak regarding sales tax. Sales tax is indirectly subject to depreciation because the tax is calculated as a percentage of the cost to replace the insured vehicle—a cost that accounts for the already depreciated vehicle. *See generally Tolar v. Allstate Tex. Lloyd's Co.*, 772 F. Supp. 2d 825, 830-31 (N.D. Tex. Mar. 22, 2011) (explaining that sales tax can be depreciated because it follows the depreciation on the underlying property).

be found in the actual language of the Policy. The plain language does not limit replacement costs to *only* those costs that can be depreciated.[6] If GEICO wanted to limit ACV in such a manner, it could have expressly done so. But it did not—and neither will this Court.

The Court finds GEICO's Policy ambiguous as to whether ACV includes the disputed fees. The Court also finds that Plaintiffs' reading of the Policy is reasonable, as have numerous other courts under materially similar circumstances. As such, the Court will construe the Policy "strictly against the insurer and liberally in favor of the insured." *King*, 519 N.E.2d at 1383. Accordingly, the Court finds that "actual cash value" includes sales tax, title fees, and title registration fees.[7] Under the Policy, GEICO was obligated to pay the disputed fees for total loss vehicles. It did not pay the fees between 2009 and 2020 and therefore breached its contract as a matter of law.

---

[6] GEICO also fails to direct the Court's attention to any caselaw that places a physical-property limitation on ACV when it is defined as replacement cost minus depreciation. This is not surprising given that the Court's review of relevant caselaw undermines GEICO's position. In *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 419 (6th Cir. 2020), an insured's home suffered significant water damage that required extensive repairs. Under the policy, the insurer issued the insured a payout on an "actual cash value" basis. *Id.* at 20. Pursuant to the policy, the insurer could deduct the ACV for depreciation. *Id.* The single issue in the case was whether the insurer was entitled to depreciate the cost of labor, in addition to the cost of materials, when calculating the ACV of the damaged property. *Id.* at 419-20. Finding the policy ambiguous, the Sixth Circuit held that the plaintiff's interpretation was reasonable—that is, the insurer could not depreciate labor costs when calculating ACV. *Id.* at 423. Thus, ACV encompassed labor costs, and those costs were not subject to depreciation. Therefore, *Perry* demonstrates that even when a policy authorizes the insurer to reduce ACV for depreciation, such a policy does not limit ACV solely to physical property that can be depreciated.

[7] GEICO argues separately that, assuming ACV requires payment of sales tax and title fees, ACV does not cover registration transfer fees because those fees relate to the maintenance of the vehicle rather than the costs to replace the vehicle. (Defs. Mot. Sum. J., ECF No. 128, PageID 3106-07.) The Court does not find this strained attempt to distinguish registration fees from title fees and sales tax persuasive. *Wilkerson* noted that when ACV is defined as "replacement cost minus normal depreciation," certain taxes and fees are "likely part of the typical 'replacement costs.'" 997 F.3d at 670. In Ohio, vehicles need to be registered to operate on Ohio roads and highways if the owner resides in Ohio. *See* Ohio Rev. Code §§ 4505.03., 4503.11, and 4503.12. This suggests that following a total loss, assuming the insured wishes to remain in compliance with Ohio law when acquiring a replacement vehicle, the replacement costs will likely include registration transfer fees. Accordingly, these fees are "likely part of the typical 'replacement costs'" and therefore are reasonably interpreted to be included in ACV. *See Ostendorf*, 2020 U.S. Dist. LEXIS 5163 (finding that "actual cash value" under policy was ambiguous and therefore could include payment of sales tax and fees, including title transfer and tag transfer fees); *Jones v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-ORL-40LRH, 2019 U.S. Dist. LEXIS 120353 (M.D. Fla. July 19, 2019) (finding ACV in GEICO policy covered license plate transfer fees because they were "mandatory [fees] necessarily included in the replacement costs of a total loss vehicle'"), *vacated pursuant to settlement agreement, Cook v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *26-27 (M.D. Fla. June 22, 2020).

### 3. Are some Plaintiffs not entitled to disputed fees?

GEICO argues in the alternative that it does not owe sales tax, title fees, and registration fees to certain Plaintiffs. Specifically, GEICO asserts that the Policy does not require GEICO to cover (1) the sales tax for Plaintiffs Davis, Phelan, and certain class members; (2) title fees for Plaintiff Davis and certain class members; and (3) registration transfer fees for Plaintiff Davis and certain class members. (Defs. Mot. Sum. J., ECF No. 128, PageID 3107-3113.) The Court addresses each argument in turn.

#### a. GEICO does owe Plaintiffs Davis, Phelan, and certain class members sales tax under the Policy

GEICO seeks to exclude Plaintiffs Davis, Phelan, and certain class members from recovering sales tax on three possible grounds: (1) they were not subject to Ohio ACV sales tax because their vehicles were either (a) leased or (b) titled outside of Ohio, (2) certain class members retained their totaled vehicles following their total loss claim, or (3) GEICO already fully compensated them for the sales tax allegedly owed. The Court now considers each contention.

##### i. The Policy does not distinguish between leased and owned vehicles

Beginning with the first ground for exclusion, GEICO draws a distinction between leased vehicles and owned vehicles by directing the Court's attention to the method that sales tax is calculated under Ohio law. For owned vehicles, the sales tax rate applies to the purchase price; for leased vehicles, the rate applies to the total amount of lease payments per the terms of the lease agreement. (*Id.*, PageID 3108 (citing Ohio Rev. Code §§ 5739.025(A), 5739.01(H), 5739.02(A)(2).) Given the differing methods of calculating sales tax, which generally results in lessees paying less in sales tax than a consumer who purchases a vehicle, GEICO concludes that the sales tax for lessees is separate from the ACV of the vehicle, and therefore lessees are not entitled to recover ACV sales tax under the Policy. (*Id.*)

The Court disagrees. Whereas GEICO seeks to distinguish owned vehicles from leased vehicles, the terms of the Policy do just the opposite. Indeed, the Policy requires GEICO to provide the same coverage for both leased and owned vehicles. The Policy defines a leased vehicle and an owned vehicle as an "owned auto"—meaning "any vehicle described in this policy for which a specific premium charge indicates there is coverage." (ECF No. 129-1 at 8.) The Policy then states that GEICO "will pay for each **loss**…to the **owned** or **non-owned auto**" without distinguishing between leased or owned vehicles (*Id.*) In fact, GEICO cannot point to any language in the Policy distinguishing leased vehicles from owned vehicles. There are no provisions that apply solely to leased vehicles or solely to owned vehicles, nor are there any provisions that require a leased vehicle to be replaced with another leased vehicle (or any vehicle at all). Instead, the language specifies that GEICO must provide leased vehicles with the same coverage for a total loss as it does for owned vehicles. [8] If GEICO does not intend to treat leased vehicles and owned vehicles alike, then it must expressly state so in the Policy. *See Westfield Ins. Co. v. Hunter*, 28 Ohio St. 3d 540, 547 (Ohio 2011) (coverage limitations must be "clearly expressed"). As such, the Policy obligates GEICO to cover taxes and fees that are "likely part of the typical replacement costs" on a replacement vehicle regardless of whether the vehicle is owned or leased—and these replacement costs include sales tax. *Wilkerson*, 997 F.3d at 670.

Although the Court need not say more on this issue, it bears mentioning that several other courts have addressed this issue and reached the same conclusion. *See Paris v. Progressive Am. Ins. Co.*, 558 F. Supp. 3d 1245, 1255 (S.D. Fla. Aug. 27, 2021) (finding that "the Policy requires [the insurer] to calculate the ACV for total loss claims on leased vehicles in the same manner it would for total loss claims on owned vehicles," where the policy did not distinguish between the two); *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1081 (M.D. Fla. Mar. 13, 2019)

---

[8] Tellingly, GEICO charged its insureds the same premiums under the Policy regardless of whether the vehicle was owned or leased.

(where "covered auto" under the policy included a leased vehicle, the court found that "the Policy requires State Farm to treat its actual cash value payments for total loss claims on leased vehicles the same as it would for total loss claims on owned vehicles, i.e., by paying sales tax and title transfer fees in the amount owed for the purchase of an owned vehicle.")

### ii. The Policy's total loss coverage does not depend on where the insured titled or registered the covered vehicle

Moving on to GEICO's next argument, GEICO asserts that it does not owe sales tax to class members whose insured vehicles were titled and registered outside of Ohio and did not incur Ohio sales tax for their totaled vehicle. This argument relies on the language from the "LIMIT OF LIABILITY" section of the Policy limiting GEICO's liability to replacing a vehicle of "like kind and quality." Pursuant to this language, if the class member did not incur Ohio sales tax when purchasing the insured vehicle, then GEICO has no obligation to pay Ohio sales tax as a replacement cost—to find otherwise would disregard the language limiting GEICO's liability to replacing a vehicle of "like kind and quality." As an example, GEICO singles out Plaintiff Davis, who garaged her vehicle in Galloway, Ohio, at the time of the loss, but purchased her vehicle in Michigan and did not pay an Ohio sales tax. (Defs. Mot. Sum. J., ECF No. 128, PageID 3111-12; Davis Declarations, ECF No. 129-13, PageID 4031 (stating "Galloway OH 43119" as Plaintiff Davis's "Vehicle Location").)

The Court finds GEICO's argument unpersuasive. For starters, nowhere in the Policy language is there any provision explicitly—or even implicitly—stating that an insured's total loss coverage depends on where the insured titles or registers his or her vehicle. Nor does the Policy include language excluding sales tax if the insured purchased the covered vehicle outside of Ohio. This reading of the Policy is bolstered further by GEICO's corporate representative who testified that the disputed fees due under the Policy are based on the location of the total loss vehicle—not the location of where the insured purchased and registered the vehicle or the location of the

accident. (Koontz Dep. ECF No. 90-2, PageID 1004-06, 1010-11.) Thus, it is irrelevant whether certain class members, including Plaintiff Davis, purchased their total loss vehicles outside of Ohio; GEICO owes them ACV sales tax just the same. Again, had GEICO wanted to limit its liability regarding ACV sales tax, it would need to do so expressly. *See Westfield Ins. Co.*, 28 Ohio St. 3d at 547. But it did not.

### iii. The Policy requires GEICO to cover the disputed fees for class members who retained their totaled vehicle

GEICO bases its next argument on the fact that certain class members have retained their totaled vehicle following their total loss claim. GEICO argues that requiring payment of sales tax for these class members would result in a windfall because they would receive sales tax based on the ACV of their vehicle while remaining in possession of the vehicle.

This argument, like GEICO's previous arguments, is unconvincing. The Policy provides that an insured may purchase his or her totaled vehicle from GEICO. (ECF No. 129-1 at 10.) The Policy does not, however, contain any language excluding any of the disputed fees based on the insured's decision to purchase the salvage. In reading the Policy's language, whether an insured retains the totaled vehicle does not appear to have any effect on the *obligations* GEICO owes to the insured; all that changes is the ACV *amount* that GEICO owes the insured. Indeed, GEICO's corporate representative reinforces this reading of the Policy, testifying that GEICO treats insureds who retain their totaled vehicle identically to those who do not. (Koontz Dep. ECF No. 90-2, PageID 1002-03, 1007 (GEICO followed the same procedure concerning the payment of sales tax, title fees, and registration transfer fees regardless of an insured's decision to retain the salvaged vehicle), 1039 (corporate representative could not envision a scenario in which GEICO would pay an insured who retains the salvage vehicle anything other than ACV less the deductible, less the salvage value). Nor do these class members benefit from a windfall given that they paid premiums for the ACV coverage; there is no windfall where the insureds receive what GEICO promised

them. GEICO's argument that the Policy precludes those insureds who retained their salvaged vehicle from recovering their sales tax runs counter to both the Policy's language and GEICO's practices. As such, the Policy requires GEICO to cover the ACV sales tax for these class members.

### iv. Class members who have been fully compensated for any of the disputed fees cannot maintain an action for those same fees

Finally, GEICO mentions that certain class members, including Plaintiff Phelan, have already received full payment of their totaled vehicle's sales tax. Thus, these Plaintiffs do not have a breach of contract claim relating to the nonpayment of sales tax. The Court agrees. For those Plaintiffs who have received the promised payment of sales tax under the Policy, they cannot maintain a breach of contract claim for GEICO's failure to pay sales tax (though they may still have a viable claim against GEICO for the nonpayment of title fees or registration transfer fees).

### b. GEICO owes Plaintiff Davis and certain class members title fees

Much like the previous section concerning sales tax, GEICO raises similar arguments seeking to exclude certain class members from recovering title fees.

First, GEICO argues that it has not breached the Policy for the nonpayment of title fees to insureds who leased their vehicles because leasing companies, not the insured, hold the title to the leased vehicle and it is the leasing company that pays the title fee. The Court rejects this argument for the reasons discussed in Section III.C.3.a.i. The Policy simply does not distinguish between leased vehicles and owned vehicles. Instead, the Policy provides the *same* coverage regardless of whether the insured owns or leases the vehicle. Accordingly, the Policy requires GEICO to pay title fees irrespective of the insured's status as a lessee or owner of the covered vehicle.

Second, GEICO asserts that any class members, such as Plaintiff Davis, who titled their vehicle outside of Ohio before their total loss are not subject to Ohio title fees in the replacement of a vehicle of "like kind and quality." This argument fails for the reasons provided in Section III.C.3.a.ii. There is no language in the Policy stating that an insured's total loss coverage turns on

where the insured titled his or her vehicle. Moreover, GEICO's corporate representative testified that the location where the insured titled the totaled vehicle is irrelevant to the calculation of ACV title fees under the Policy. GEICO therefore owes these class members title fees.

Third, GEICO argues that it does not owe title fees to class members who retained their totaled vehicle because these insureds, by retaining the totaled vehicle, also retain title to their vehicle. For the reasons articulated in Section III.C.3.a.iii, this argument falls short. GEICO's position on this issue is contrary to both the Policy's language and GEICO's business practices. Hence, GEICO owes insureds title fees regardless of their decision to retain salvage.

Finally, GEICO argues—and the Court agrees—that GEICO did not breach the Policy relating to title fees for any class member who received full payment for this fee. Any class member who has received the promised payment of title fees cannot pursue a breach of contract claim for the nonpayment of such fees (this does not preclude an action against GEICO for the nonpayment of the other disputed fees, *i.e.*, sales tax and registration transfer fees).

### c. GEICO owes Plaintiff Davis and certain class members registration transfer fees

GEICO also argues that it does not owe Plaintiff Davis and certain class members registration transfer fees because: (1) insureds with leased vehicles would not have a valid Ohio registration in their name at the time of their total loss; (2) certain class members, including Plaintiff Davis, did not have a valid Ohio registration at the time of their total loss; (3) those insureds who retained their totaled vehicle following the total loss would not have a registration to transfer; and (4) certain class members have already received the full amount of the claimed registration transfer fees.

The Court rejects the first three arguments. As discussed in Section III.C.3.a.i, the Policy treats leased and owned vehicles alike following a total loss; GEICO's attempt to distinguish the two has no basis in the Policy's language. Next, as described in Section III.C.3.a.ii, the Policy's

total loss coverage does not depend on where the insured registered his or her vehicle; what matters is where the insured garages the vehicle at the time of the loss, as GEICO's corporate representative testified. And Section III.C.3.a.iii sets forth the Court's reasoning as to why an insured's choice to retain his or her totaled vehicle does not preclude the insured from recovering the disputed fees.

The Court agrees with GEICO's fourth argument—that is, for those class members who have been fully compensated for their claimed registration transfer fees, they do not have a viable claim against GEICO for those same registration transfer fees (though they may still have a claim for sales tax and title fees).

In sum, the Policy requires GEICO to pay the disputed fees to Plaintiffs and class members regardless of whether they (a) owned or leased the totaled vehicle; (b) purchased, titled, or registered the totaled vehicle outside of Ohio; or (c) retained their vehicle following the total loss. GEICO is not required to pay sales tax, title fees, or registration fees to those Plaintiffs and class members who have already been fully compensated.

### 4. Plaintiffs have established damages

GEICO's practice of adjusting total loss claims by withholding sales tax and transfer fees unless and until the insured purchased a replacement vehicle, incurred sales tax on the vehicle, and provided proof to GEICO that the insured incurred sales tax, has damaged Plaintiffs and class members under the Policy. As Plaintiffs' moving papers explain, damages are comprised of transfer fees of $19.50 (prior to January 2020) or $21.00 (post-January 2020) and sales tax of 5.75% (plus applicable local surtax) on the underlying adjusted vehicle value, less any amounts that GEICO has already paid. GEICO does not dispute the amount of these fees, only whether they are owed. GEICO does, however, insist that questions of material fact concerning vehicle valuations preclude summary judgment. Specifically, GEICO argues that there are questions

surrounding whether GEICO may have overpaid certain Plaintiffs and class members, thus negating any damages—and therefore any breach of the Policy:

> Plaintiffs' theory of liability is that GEICO underpaid "ACV." But even if ACV is interpreted to require payment of the taxes and fees Plaintiffs claim, the omission (or underpayment) of fees does not actually establish that GEICO underpaid ACV for any claim. This is because ACV is comprised of items beyond taxes and fees, such as vehicle value. An overpayment for any particular component of ACV, like vehicle value, would directly implicate whether ACV was underpaid or overpaid on a claim, and in turn whether GEICO is liable.

(Defs. Mot. Summ. J. at 32–33, ECF No. 141.)

This argument is a nonstarter. Under the terms of the Policy, GEICO determines, through its adjusters, the adjusted value of an insured vehicle. Whether the adjuster places a higher value on the vehicle than, say, the valuation in the CCC Market Valuation report is irrelevant; GEICO, regardless of the adjusted value of the insured vehicle, must add sales tax and transfer fees on top of that amount.

The above analysis comports with the law in this circuit. As the Sixth Circuit explained, "any overestimation by [the insurer] simply operates as an error in the insured's favor." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 461 (6th Cir. 2020) (quoting *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018)). Thus, any potential "overestimation" by GEICO "simply operates as an error in the insured's favor" and does not offset any other taxes or fees to which Plaintiffs and class members are owed. Accordingly, barring any affirmative defense, GEICO has damaged each Plaintiff as follows: Plaintiff Davis was underpaid $355.27, Plaintiff Randall was underpaid $304.55, Plaintiff Resendez was underpaid $779.45, Plaintiff Phelan was underpaid $19.50, and Plaintiff Roberts was underpaid $676.65. (Pls. Mot. Summ. J. at 6–9, ECF No. 129.) Additionally, prevailing Plaintiffs and class members are entitled to prejudgment interest. Ohio Rev. Code § 1343.03(A); *see also Gates v. Praul*, 2011-Ohio-6230, ¶ 60 (Ohio Ct.

App. 2011) ("Once the plaintiff receives judgment on a contract claim, the trial court has no discretion other than to award prejudgment interest under R.C. 1343.03(A).").

### 5.  GEICO has not established the affirmative defense of accord and satisfaction

GEICO also raises the affirmative defense of accord and satisfaction in an attempt to bar Plaintiffs Phelan and Davis's claims. The parties agree that Ohio Rev. Code § 1303.40 governs. The statute, which codifies Uniform Commercial Code § 3-311, provides in pertinent part:

> If a person against whom a claim is asserted proves that that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument, all the following apply:
>
> (A) Unless division (B) of this section applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
>
> [Division (B) does not apply.]

Ohio Rev. Code § 1303.40.

Within the doctrine of accord and satisfaction are "[t]wo essential safeguards to protect creditors from overreaching debtors: [1] there must be a good-faith dispute about the debt and [2] the creditor must have reasonable notice that the check is intended to be in full satisfaction of the debt." *Ferrara v. Vicchiarelli Funeral Servs.*, 2015-Ohio-2273, ¶ 13 (Ohio Ct. App. 2015) (internal quotations omitted). If GEICO can carry its burden on the affirmative defense of accord and satisfaction, the debt owed to Plaintiffs is discharged as a matter of law. *See City of Parma v. Wielicki*, 2011-Ohio-6291, ¶ 9 (Ohio Ct. App. 2011).

GEICO argues that the undisputed facts concerning GEICO's prior payments to at least two named Plaintiffs, Plaintiffs Phelan and Davis, constitute accord and satisfaction. According to GEICO, during the settlement process both Plaintiffs contested the amount GEICO originally offered them yet accepted payment after receiving a form titled "Total Loss Settlement

Explanation," which provided a breakdown of the settlement payment. (Defs. Mot. Sum. J., ECF No. 128, PageID 3114-15; Total Loss Settlement Explanation, ECF No. 128-17.) Plaintiffs, however, identify several portions of the record that call into question whether there was (1) a "conspicuous statement" that the total loss payment "was tendered as full satisfaction of the claim" and (2) a "bona fide dispute" between the parties. (Pls. Opp'n, ECF No. 151, PageID 5483-86.)

The Court begins by addressing whether GEICO's Total Loss Settlement Explanation is sufficient as a matter of law to satisfy Section 1303.40's "conspicuous statement" requirement. The official comment to Section 1303.40, which quotes UCC § 1-201(10), provides that a statement "is conspicuous if 'it is so written that a reasonable person against whom it is to operate ought to have noticed it.'" For example, conspicuous terms include "[a] heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size." *Strom Eng'g Corp. v. Int'l Fiber Corp.*, 2013 U.S. Dist. LEXIS 133586, at *18 (S.D. Ohio Sep. 18, 2013) (quoting Ohio Rev. Code § 1301.201(10)). The conspicuous statement "can be made on the negotiable instrument itself, or in a written communication accompanying payment." *Fox Consulting Grp., Inc. v. Spartan Warehouse & Distribution*, 2016-Ohio-7621, ¶ 15 (Ohio Ct. App. 2016).

Here, the written communication accompanying GEICO's payment to Plaintiffs featured the following heading: "**TOTAL LOSS SETTLEMENT EXPLANATION.**" (*See* ECF No. 128-17, PageID 3390 (Plaintiff Phelan); ECF No. 128-25, PageID 3448 (Plaintiff Davis).) The text is in all capitals, making the text greater in size than the surrounding text, and it is in bold (in contrast to most of the other text). Attached to the settlement explanation is a letter addressed to each Plaintiff, which expressly states that "[t]he enclosed "Total Loss Settlement Explanation" is a breakdown of your vehicle's settlement." (ECF No. 128-17, PageID 3389 (Plaintiff Phelan); ECF No. 128-25, PageID 3447 (Plaintiff Davis).) Given GEICO's explicit characterization of the

27

payment as a "total loss settlement," the Court finds—as a matter of law—that a "reasonable person against whom it is to operate ought to have noticed it." Ohio Rev. Code § 1303.40 cmt. 4; *see also* Ohio Rev. Code § 1301.201(10) ("Whether a term is 'conspicuous' or not is for decision by the court.")

The Court next addresses whether there was a bona fide dispute—a question typically reserved for the trier of fact. *Wielicki*, 2011-Ohio-6291, at ¶ 11. A bona fide dispute does not need to be well-founded, and neither party must be right in its contentions, "but it is essential that it be bona fide and honestly believed in." *Id.* at ¶ 12. Importantly, the party seeking to prove accord and satisfaction "must also show that at the time the offer was made, the claim was 'unliquidated or subject to a bona fide dispute.'" *Midland Nat'l Life Ins. Co. v. Gavin*, 2014 U.S. Dist. LEXIS 179227, at *14 (N.D. Ohio Dec. 31, 2014) (quoting Ohio Rev. Code § 1303.40). In the absence of a dispute, the debtor gives up no more than what it already owes; "In other words, 'a partial payment in the absence of an underlying dispute is merely a thing which the party is already bound to do.'" *Citibank (South Dakota), N.A. v. Perz*, 2010-Ohio-5890, ¶ 44 (Ohio Ct. App. 2010) (quoting *Rhoades v. Rhoades*, 40 Ohio App. 2d 559, 562 (Ohio Ct. App. 1974)).

The Court finds that GEICO cannot, as a matter of law, establish the affirmative defense of accord and satisfaction against Plaintiff Davis. The undisputed chronology of Plaintiff Davis's settlement process demonstrates that, at the time GEICO issued the total loss payment, there was no bona fide dispute. (Davis. Dep. at 50:2-12, ECF No. 151-8.) Only *after* receiving her payment from GEICO did she take issue with the amount. Moreover, after communicating her displeasure with GEICO, GEICO never made a subsequent payment to settle any purported "dispute" over the claim. (*Id.*) Thus, because GEICO cannot prove that "at the time the offer was made, the claim was . . . subject to a bona fide dispute," the affirmative defense of accord and satisfaction does not bar Plaintiff Davis's claim. *See Gavin*, 2014 U.S. Dist. LEXIS 179227, at *14. Put differently,

when GEICO tendered the settlement amount to Plaintiff Davis, it was simply doing what it was "already bound to do" under the Policy. *See Perz*, 2010-Ohio-5890, at ¶ 44.

In contrast to Plaintiff Davis, there is a question of material fact as to the existence of a bona fide dispute when GEICO issued payment to Plaintiff Phelan. *Before* receiving payment from GEICO, Plaintiff Phelan told GEICO that she disagreed with GEICO's valuation of her vehicle, and she requested additional payment for fees. (Pl.'s Resp. Defs. Stmt. Material Facts ¶ 37, ECF No. 143.) After communicating this with GEICO, GEICO later offered payment with amounts included for sales tax, which Plaintiff Phelan subsequently accepted. (*Id.* at ¶¶ 38–41.) Plaintiffs challenge GEICO's characterization of this series of events as amounting to a bona fide dispute, noting that "there is simply no evidence that GEICO disputed it owed benefits under the Policy but paid it simply to resolve the dispute—rather, GEICO paid the amount it believed it owed under the Policy." (Pls. Opp'n, ECF No. 151, PageID 5485.) If true—that is, if GEICO simply paid the amount it believed it owed under the Policy, then Plaintiffs are correct. *See Perz*, 2010-Ohio-5890, at ¶ 44. However, the Court is unable to say what GEICO believed at the time it issued payment. Therefore, the Court finds that this is a matter best reserved for the trier of fact. *See Wielicki*, 2011-Ohio-6291, at ¶ 11.

## IV.    CONCLUSION

Sales tax, title fees, and registration fees are mandatory parts of the replacement cost under the GEICO Policy for Plaintiffs' (and the class members') total-loss vehicles and therefore are components of ACV under the Policy. GEICO's failure to pay these taxes and fees constitutes a breach contract. As for those class members who have received full payment for any of the disputed taxes and fees, they may not maintain actions for those already-paid fees (but they may still maintain actions for those fees to which GEICO has not yet paid). GEICO may, however, assert the affirmative defense of accord and satisfaction at Plaintiff Phelan's trial.

Finally, as stated in the Order Setting Trial Date and Settlement Conference (ECF No. 177), the parties shall attend a settlement conference before the undersigned on **March 7, 2023** at **9:30 a.m.**, at which the undersigned will discuss with the parties how this class action should be managed moving forward.

For the reasons stated above, it is **ORDERED and ADJUDGED** as follows:

- GEICO's motions to exclude expert testimony and reports are **DENIED as moot** (ECF Nos. 179, 180);

- GEICO's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part** (ECF Nos. 128, 134);

- Plaintiffs' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part** (ECF Nos. 129, 136);

- GEICO's Motion to Stay is **DENIED as moot** (ECF No. 124); and

- Plaintiffs' extension request is **DENIED as moot** (ECF No. 181).

This case remains open.

**IT IS SO ORDERED.**


**3/2/2023**                                   **s/Edmund A. Sargus, Jr.**
**DATE**                                        **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**